dren or their issue; but I think that the words of the statute, "shall have been dead at the time of the making of the will," refer to, and include the deceased members of a class, whether they are referred to in the will by name or in a collective sense, and that under the will in question, the issue or legal representatives of the eleven dead children are entitled to that share or portion of the estate which they would have received had they survived the testator, and that such was the intention of the testator.

In support of this conclusion, in addition to the authorities already referred to, I cite the case of Chenault v. Chenault, 11 S. W. R., 424, a case arising under the Kentucky statute which is similar to ours, where it was held "that a devise of property to be equally divided among the children of testator's brothers and sisters will inure to the benefit of a grandson of testator's deceased brother whose father was dead before the execution of the will." While it is true that in Kentucky there are two statutes, both of which were construed together in the above case, yet the general principle is the same. Fuller v. Martin, et al., 29 S. W. R., 315—another Kentucky case. In this case, at the time the testator made his will, and when he died, he had one brother and five sisters living, two brothers and one sister having previously died, leaving issue. By the will, he gave to his "brothers and sisters"all his property equally. Held, "that it was his intention to include all his brothers and sisters, living and dead, in the provision, so as to provide for the issue of those who were dead."

The decision in this case is remarkable, in that it states that the statute can render no aid in the solution of the question, completely overlooking Chenault v. Chenault, supra, and decides the case on the peculiar phraseology of the will, for the court say: "It seems to us, that as the words used can not be applied as a description of living objects, he must have intended to describe all his brothers. He could not properly describe his living brother as "brothers;" and, if effect be given the language used, we must suppose that the testator, knowing that the issue of the dead brothers and sisters took by substitution, meant to include all his brothers and sisters as a class, the dead as well as the living," and refers to Huntress v. Place, 137 Mass., 409, as authority for the doctrine. Dehaven v. Oglesby, 38 S. W., 145, is a case similar to the one at bar, in which the case of Chenault v· Chenault, supra, is cited and approved. Wildberger v. Cheeks, Ex'rs., 27 S. E., 441. For contrary doctrine see Almy v. Jones et al., 21 Atlantic Reporter, 616; Williams v. Knight, 27 Altantic Rep., 210. Both these cases are Rhode Island cases, but the statute of that state is unlike ours, in that it makes one provision in express terms, to provide for the disposition of a legacy where the devisee was dead when the will was made. Buzby v. Roberts, et

al., 32 Atlantic, 9, is a case relied on by counsel for the 28 children. Also Martin v. Trustees of Mercer University, 25 S. E. R., 522, Supreme Court of Georgia. The statute of Georgia is identical with ours except that it contains the negative clause, "shall not lapse." In this case, under a bequest "to each of my immediate nephews and nieces, $1,000.00 apiece," it was held that the gifts embraced in the words quoted, were to persons of a class, and included only those who were living at the testator's death, and that the children of nephews who died before the testator, took nothing.

The court say: "The statute was passed to prevent a legacy from lapsing when the legatee is ascertained. If what we have already said is sound, no person of a class can be a legatee unless he is living at the time of the testator's death. Thirteen of these nephews and nieces being dead at the time of testator's death,—they could not be legatees under the will; and of course, if they were not legatees, this section of the Code cannot apply to them, and their children or grand-children cannot take anything under it."

This case is in direct conflict with our own supreme court in holding that the statute does not apply to a class, and, of course, cannot be followed.

One other perplexing question remains, arising under the 4th item of the will. In the distribution of the proceeds of the Lyle farm, do the heirs at law take per capita or per stirpes? The use of the word "equally" would indicate the former, but I can see no just reason for directing a distribution under this item different from that under items 2 and 5.

It therefore follows that the issue or descendants of those children of the testator's brothers and sisters who were dead at the time the will was made, are entitled to the respective shares of the estate which their several ancestors would have taken if alive, and the same is decreed accordingly.

D. M. Gruber, for plaintiff.

John M. Cook, J. C. Bigger, for nephews and nieces.

R. G. Richards and P. P. Lewis, of Steubenville, D. Cunningham, John B. Busby & W. T. Perry, of Cadiz; Healea & Greene, of Uhrichsville; J. E. Griffith, of Marysville, for grand-nephews and nieces.

---

(Probate Court, Scioto county, Ohio.)

L. S. BECKETT v. E. H. WISHON, et al.

---

In proceedings in aid of execution against a superintendent of a county infirmary, which seek to seize his wages or salary, the county has a right to withhold so much of such salary or wages as is necessary to pay the taxes of the

superintendent, and it is not required to resort to the tax liens.

The wages or salary of a superintendent of a county infirmary, earned within three months—he being the head of a family—are "personal earnings," within the meaning of section 5430, Revised Statutes of Ohio, and as such, exempt from execution, if the same are necessary for the support of himself and family.

A watch and chain of reasonable value, habitually worn by a person, are "wearing apparel," and are exempt under said section 5430, which gives to heads of families "the wearing apparel of such person or family."

BALL, J.

The plaintiff, a judgment creditor, brought two proceedings in aid of execution against the defendant E. H. Wishon, judgment debtor. The second proceeding sought·to reach earnings of the defendant earned subsequently to the filing and hearing of the first motion. Both will be treated as one proceeding.

The defendant, Wishon, is the head of a family, having a wife and several children; he is superintendent of the county infirmary, and as such, receives $50 per month, of which $20 is for his wife, who is matron of the institution. When the first proceeding was instituted, there was due Wishon his August salary, and the second proceeding endeavors to reach his salary for September, October and November.

The defendant is also indebted to the county for taxes in the sum of $92.10 on real estate, and $9.41 on personal property. The treasurer of the county, on behalf of the county, maintains that he has a right to hold so much of the amount due the defendant, as superintendent, as will be necessary to satisfy the taxes due the county, and apply it to their payment. It is also the defendant's desire so to dispose of his wages. It is contended by the plaintiff, however, that the county, having a lien for taxes on the real estate and the right to seize personal property, in addition to the right to apply his wages to the payment of the taxes, has, in effect, two liens for the same debt, and therefore, can be compelled to resort to the security to which the plaintiff has no right, and to leave plaintiff all the wages now due defendant and upon which plaintiff claims a lien by reason of these proceedings. To this, however, we cannot assent. The county owes Wishon, and Wishon owes the county, and the county has a right to withhold the money due Wishon, and it is not compelled to resort to its tax lien.

The defendant further claims the amount of his salary in excess of the taxes, is exempt from execution and cannot be reached in these proceedings,

under section 5430 of the Ohio Statutes, which excepts—"the personal earnings of the debtor for three months, when it is made to appear that such earnings are necessary for the support of the debtor or his family." The plaintiff contends that this applies only to common, manual labor, and that Wishon is not such a laborer. The court cannot so hold. It is not necessary to follow the distinction sought to be made; it is sufficient to say that the wages, compensation, or salary which he receives, are certainly personal earnings, and therefore, exempt.

It is also shown by the evidence that Wishon is the owner of a watch of small value, a present to him from his brother, and a gold chain of small value, a present to him from his wife, both of which he wore and used constantly and had on at the hearing. The plaintiff seeks to have these applied to the judgment, while the defendant contends that they are exempt under the section referred to above, as "wearing apparel." This claim has given the court no little concern. There are only two cases in Ohio bearing on this case, so far as we have been able to find. In the case of Clary v. The Protection Insurance Company, Wright, 228, it was held by the court, that—"A watch is a memorandum article, and not embraced in the common policy" of insurance as wearing apparel. The peculiar wording of the decision does not warrant us in saying the court holds that a watch is not "wearing apparel," but that it is of that class of articles which insurance companies always specifically mention, or do not include in the policy. Nor do we gather from the decision that the watch was one commonly worn by the insured.

The other Ohio case, one cited by the plaintiff, is In Re George M. Lilliland, habeas corpus, 4th Weekly Law Bulletin, 733; but this case is not in point. The Probate Court of Cuyahoga had ordered Lilliland, on a proceeding brought against him by C. C. Lloyd & Co., to turn over to the sheriff, as receiver, a watch and chain. This Lilliland refused to do, and was proceeded against a for contempt. As far as the case cited shows, there was no contention that Lilliland was the head of a family and entitled to exemption, or that there was any claim of the watch being exempt as "wearing apparel." The point at issue in this case was not considered there at all, as far as the record shows; we are therefore without authority, as far as Ohio is concerned, and must weigh the matter in the light of these and other cases to which we shall refer.

In Rothschild v. Boelter, 18th Maine, 362, 29th Am. & Eng. Encl. Law, 40, in which it was held that a watch and chain, worth $40 or $50, worn by the debtor, was not exempt under the statute as "wearing apparel of the debtor

and his family," the court say:—"The words are to be construed in this case according to the common and approved usage of the language; namely, as referring to garments or clothing, generally designed for wear of the debtor and his family."

To the same effect is Sawyer v. Sawyer, 28th Vt., 252, wherein it was held that a watch, watch-key, watch chain, guard and seals, a finger ring, a sword and sword-belt, were not to be deemed as part of the wearing apparel of the deceased husband, which go to the widow under sec. 1, chap. 50, Vermont Comp. Stat.:—"The court think this was a sound construction of the statute. They seem to me to fall clearly within the category of ornament. To call them 'wearing apparel,' is to give a latitudinarian meaning to the term which the egislature never intended it should have; though a watch may have a further use than mere ornament, yet that is not enough to make it and its incidents "wearing apparel." A finger ring is peculiarly a matter of ornament, and we are disposed to consider the sword and sword-belt as emblems of distinction worn on special occasions, and which are in no way attached to the 'wearing apparel,' so as to become a part of it." But Redfield, C. J., dissenting, says:— "It seems to me that a watch which one wears, and the chain and seals, are dress and apparel."

In Smith v. Rogers, 16th Ga., 480, an insolvent moved to exempt from sale a watch which he claimed as part of his wearing apparel; his wife had claimed and been allowed a gold watch. The court say:—"Various articles of property have, from time to time, been exempt by the legislature from this liability; but among these articles are not to be found watches, unless they come under the head "wearing apparel." It is doubtful whether they can be made to come under that head; if, however, they can, we think that not more than one can be made to do so.

As having some bearing upon the subject, see also, In Re Thiell, 4th Biss., 241; In Re Graham, 2nd Biss., 449; Herman, Ex., sec. 99.

In Gooch v. Gooch, 33rd Maine, 535, it was held that a watch which the testator had been in the habit of carrying upon his person, did not pass by the bequest of his "wearing apparel," nor by the bequest of his household furniture.

The question was somewhat thoroughly reviewed in the case of Stewart v. McClung, 12th Oregon, 431,53rd Am. R., 374, in which it was sought to require an insolvent debtor to surrender and deliver to his creditors, a gold watch and chain, valued from $50 to $70. By the deed of assignment, the assignor excepts such property as was exempt from execution, without specifying the property. The contention was, that a watch and chain may be properly considered as articles of "wearing apparel," and as such, exempt from execution and protected by his assignment. The court say:—"Our statute provides that the 'necessary wearing apparel owned by any person to the value of $100,' shall be exempt from execution, is selected and reserved by the judgment debtor or his agent. The question whether a watch is a necessary article of wearing apparel, and as such, exempt, seems from the decisions, to depend upon the particular facts or attendant circumstances of each case; such as, the value of the watch, the condition of business of the debtor, etc., and has been differently decided under different circumstances. If a watch is, in no sense, 'wearing apparel,' as some authorities indicate, the judicial construction of the word 'necessary' is of no consequence; on the other hand, it would seem, if a watch worn by a person may be considered as a part of his dress or apparel, the word 'necesary,' as judicially construed, would not so materially affect the meaning of the phrase 'wearing apparel,' as to exclude it. It is probably true that a watch is ordinarily worn more for convenience than as a mere luxurious ornament; but to determine whether it is one or the other, necessary, or luxurious as an article of dress or apparel, the value of the watch is allowed to have a controlling influence in determining that result. If the value of the watch be unreasonable, or too much money be invested in it, the law regards it as justice to the creditor would require, rather as a luxury than as a necessity; and under our statute, this judgment of value would necessarily become an important factor, as the exemption of 'wearing apparel' is limited to $100. But as we have seen, upon the question whether a watch is a necessary article of wearing apparel, the authorities are conflicting. Upon the whole, our judgment inclines us to the opinion that the phrase 'necessary wearing apparel,' as used in our statute, may include in it a watch of moderate value, without doing violence to its meaning. We are not, therefore, prepared to say that a watch of moderate value is not a necessary article of 'wearing apparel,' and as such, exempt, when it is made to appear affirmatively that the watch, or other articles of apparel selected or reserved, do not exceed the amount limited by statute." After reviewing a number of cases, the court held:—"A watch may be exempt from execution as 'wearing apparel,' upon affirmative proof that the amount of exemption is not exceeded."

In Re Steele, 2nd Flipp., 324, (U. S.), the meaning of the term "wearing apparel," used in the Bankrupt Act, was carefully considered by Hammond,

Judge of the United States District Court for the Western District of Tennessee. John Steele had been allowed a claim, as exempt, a watch, which he described as a plain, old-style, single-case, gold watch, which he had owned for twenty-five years or more, and which would scarcely sell for $25. The question was, whether it could be held by him as exempt, under the law exempting "other articles and necessaries," and "wearing apparel." The learned judge said:—"It would not be doing any great violence to the meaning of the term 'wearing apparel,' as used in the Bankrupt Act, to include in it a gold watch of moderate value. The definition of the word 'apparel,' as used by lexicographers, is not confined to clothing; the idea of ornamentation seems to be rather a prominent element in the word, and it is not improper to say a man 'wears' a watch, or 'wears' a cane. The exemption law of Arkansas says, that 'wearing apparel' except watches, shall be exempt.'" The court allowed John Steele the watch.

In Bumpus v. Maynard, 38th Barber, N. Y., 626, 29th Encyclopedia, 39, the debtor was in bed; his clothes were on a chair and his watch on a table. The officer was sued for refusing to levy on them, and it was held that they were exempt, as "wearing apparel," notwithstanding they were not on the person. There are some expressions in the case which indicate that possibly the court did not intend to include the watch as "wearing apparel," but it is probable that he did.

In Mack v. Parks, 8th Gray, (Mass.) 517, 69th American Decisions, 269, it was held, in a case where an officer with attachment, asked a debtor to let him look at his watch, and, being permitted, tore it from his person by breaking the guard by which it was attached, that the watch was exempt from seizure by common law, because, by that law, "wearing apparel" on the person was exempt from levy or distraint. The court say:—"The justification on which the defendant relies, in answer to the trespass alleged in the declaration, depends upon the right of a sheriff, or other officer, to attach on mesne process, articles worn on the person of the debtor, as part of his dress or apparel. The watch, at the time it was taken by the defendant, was in the plaintiff's actual possession and use, worn as part of his dress or apparel."

In Brown v. Edmunds, South Dakota, 59th Northwestern Reporter, 731, a watch and chain were held not exempt, as "household furniture;" but upon a motion for re-hearing, the court held in the same case, 66th Northwestern Reporter, 310, under the laws of South Dakota, which make absolutely exempt, "all wearing apparel and clothing of the debtor and his family," a watch and chain owned and habitually worn by the debtor, is absolutely exempt, as "wearing apparel," citing in support, In re Steele, and Stewart v. McClung, to which cases reference is made above.

Webster says:—"Apparel is the external clothing, vesture, garment, dress, garb, external habiliments or array," giving as a synonym, "costume," "attire," "habiliments," etc. Dress, he says, "is that which is used as a covering or ornament of the body," and array, he says, "is rich or beautiful apparel."

The Century Dictionary says, that wearing apparel means garments worn and made for wearing, dress in general; and speaking of watches, says:—"Watches were invented about the beginning of the 16th century, and for a long time, the wearing of a watch was considered, in some degree, a mark or proof of gentility."

That apparel includes more than mere clothing, is laid down by all writers; but how much more, is unsettled. It would probably be giving the term too great a scope to say that it includes everything worn; but it does seem to the court that the weight of authority is to the effect that a watch and chain of moderate value, which has been worn for years by a person, become part of his "wearing apparel," and therefore, exempt from execution; and especially is this true when we remember that the statutes on exemptions are construed liberally.

The motion will be denied in each case, and the proceeding dismissed at cost of plaintiff.